IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

LARRY O. JOHNSON,

             Plaintiff,

    v.

CARL STOUT, et al.,

             Defendants.

Civil Action
No. 14-7388 (AET-DEA)

**OPINION**

APPEARANCES:

Larry O. Johnson, Plaintiff Pro Se
#552746/694526C
New Jersey State Prison
Second & Cass Street, PO Box 861
Trenton, New Jersey 08625

**THOMPSON, District Judge:**

## I.  INTRODUCTION

Before the Court is Plaintiff Larry Johnson's ("Plaintiff"), submission of a civil rights complaint pursuant to 42 U.S.C. § 1983. (Docket Entry 1). Plaintiff is a state prisoner currently confined at New Jersey State Prison ("NJSP"), Trenton, New Jersey.  By Order dated March 16, 2015, this Court granted Plaintiff's application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a). (Docket Entry 3)  At this time, the Court must review the complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon

which relief may be granted, or because it seeks monetary relief
from a defendant who is immune from such relief.   For the
reasons set forth below, the Court concludes that the complaint
shall be dismissed in part and shall proceed in part.

**I. BACKGROUND**

On October 31, 2014, Plaintiff filed a complaint against
NJSP corrections officers Carl Stout and Anthony Anderson, II,
Courtline Judge Lisa Jantz, and former NJSP Administrator
Kenneth Nelson. (Docket Entry 1). The following factual
allegations are taken from the complaint and are accepted for
purposes of this screening only.   The Court has made no findings
as to the veracity of Plaintiff's allegations.

According to Plaintiff's complaint, Plaintiff had trouble
breathing in June 2012 due to the heat. (Docket Entry 1 at 10).
He yelled for help and kicked on the cell door in an attempt to
get someone's attention. (Docket Entry 1 at 10). Approximately
twenty-five minutes later, Defendant Stout walked by Plaintiff's
cell during his rounds, at which time Plaintiff requested
medical assistance. (Docket Entry 1 at 10). Defendant Stout
responded that he would make a call after he finished his count.
(Docket Entry 1 at 10).

Plaintiff waited about thirty-five minutes, however no help
arrived. He began kicking his door again, at which time Sgt.
Brown and Defendant Stout arrived at Plaintiff's cell. (Docket

2

Entry 1 at 10). Plaintiff complained that Officer Stout had not helped him with his medical request, and Sgt. Brown stated she would help him once she finished her rounds. (Docket Entry 1 at 11). She then left to continue her rounds; Defendant Stout remained at Plaintiff's cell.

Defendant Stout demanded to know why Plaintiff had complained to Sgt. Brown. (Docket Entry 1 at 11). Plaintiff responded with a racial epithet and told Defendant Stout he "get[s] paid to be lazy and dumb." (Docket Entry 1 at 11). Plaintiff states Defendant Stout noticed water on the side of Plaintiff's cell from a leak in the roof, and upon Sgt. Brown's return, he claimed Plaintiff had thrown a cup of liquid onto his uniform. (Docket Entry 1 at 11). Plaintiff denied splashing Defendant Stout, however Sgt. Brown accepted the accusation and called a Code 1033. (Docket Entry 1 at 11). Plaintiff began to yell that Defendant Stout had threatened his life and repeated his racial slur to the officer. (Docket Entry 1 at 12).

An unknown number of officers responded to the code called by Sgt. Brown and escorted Plaintiff to medical in handcuffs. (Docket Entry 1 at 12). During the trip to medical, an unidentified officer punched Plaintiff in the middle of his back and whispered "you like to splash [officers], we will see about that" and "this is our prison and we protect our actions by any means cost, to keep the DOC united." (Docket Entry 1 at 12).

3

Upon arriving at medical, Plaintiff screamed for help and told the nurse that the officers were going to kill him as soon as he left medical. (Docket Entry 1 at 12). After being cleared to leave medical, the same officer took Plaintiff back to his cell and told him "we do what we want in our house" and "we will have to show you this is NJSP not Crackerville." (Docket Entry 1 at 13).

After approximately forty-three minutes, Plaintiff entered I-Left lock up still in handcuffs. (Docket Entry 1 at 13). He was taken into a small search room and was punched in the back of the head, pushed, tossed onto the ground, kicked, and stomped on by numerous officers. (Docket Entry 1 at 13). He was then picked up off the floor and tossed into a dry cell. (Docket Entry 1 at 14). Plaintiff states the cell had no running water, bugs, no mat, no sink, and no working toilet. (Docket Entry 1 at 14). He further asserts he was given brown, contaminated water and inedible food. (Docket Entry 1 at 14). He complained to nurses that he had received bug bites on his leg and right arm, however they did not provide assistance. (Docket Entry 1 at 14). Plaintiff states he wrote to Defendant Nelson with no response. (Docket Entry 1 at 14).

At the end of June 2012, Plaintiff received a disciplinary charge for splashing Defendant Stout, N.J. ADMIN. CODE 10A:4-4.1, *.012 ("throwing bodily fluid at any person or otherwise

4

purposely subjecting such person to contact with a bodily fluid"). (Docket Entry 1 at 14). He was also charged with assault in the New Jersey Superior Court Law Division. (Docket Entry 1 at 14).[1]

At Plaintiff's disciplinary hearing, Defendant Lisa Jantz found him guilty of the prohibited act and ordered Plaintiff to pay for Defendant Stout's uniform. (Docket Entry 1 at 15). Plaintiff was shown photographs of Defendant Stout's uniform but was not permitted to have lab work done or to take a polygraph in his defense. (Docket Entry 1 at 15). Plaintiff asserts Defendant Jantz conspired with the other officers to find him guilty because she performed "sexual favors" for certain officers. (Docket Entry 1 at 15). Plaintiff was transferred out of the dry cell on August 1, 2012 and placed in the North Compound MCU/Close Custody Unit 3B Right. (Docket Entry 1 at 15).

After the assault charges against Plaintiff were resolved in April 2013, Defendant Stout and approximately six other officers, including Defendant Anderson, came to Plaintiff's cell door. (Docket Entry 1 at 16-17). Defendant Stout identified Plaintiff as the "jackass" who splashed him and stated "Never press outside charges on [the prisoners] just whip [their] ass

---

[1] Plaintiff indicates the assault charge was downgraded to a fine in April 2013. (Docket Entry 1 at 16).

because we got SID by our side to cover up our flaws." (Docket
Entry 1 at 17). Defendant Stout told incoming officers that
Plaintiff "loves splashing" officers and complained that the
courts would not give Plaintiff any more prison time. (Docket
Entry 1 at 17).

Plaintiff alleges Defendant Anderson thereafter engaged in
a pattern of harassment against him in order to support
Defendant Stout and to penalize him for escaping further prison
time on the assault charge. In August 2013, Defendant Anderson
"fired" Plaintiff from his position as unit runner, and hired a
Protected Custody inmate to replace him. (Docket Entry 1 at 17-
18). Plaintiff states that Defendant Anderson hired this
particular inmate to protect himself from any attacks. (Docket
Entry 1 at 18). Plaintiff attempted to move out of Defendant
Anderson's unit, however his requests to Defendant Nelson were
never answered. (Docket Entry 1 at 18). Plaintiff also states
the social worker avoided him whenever he attempted to ask her
about his grievances. (Docket Entry 1 at 18).

He states Defendant Anderson additionally arranged for his
cell to be searched three times per week without cause. (Docket
Entry 1 at 18). On October 20, 2013, Defendant Anderson entered
Plaintiff's cell and told him to exit for a cell search. (Docket
Entry 1 at 20). Plaintiff asserts this was the first time only
one officer conducted a cell search. (Docket Entry 1 at 20).

6

Plaintiff entered the shower area. (Docket Entry 1 at 20).
Defendant Anderson then took Plaintiff's television, which had
been loaned to him by an unidentified officer. (Docket Entry 1
at 15, 20).

In response, Plaintiff yelled after the officer and "busted
out the shower gate and climbed out and refuse[d] to lock in."
(Docket Entry 1 at 20-21). Plaintiff proceeded to "trash" the
unit by dumping trash cans and broke the gate on another shower.
(Docket Entry 1 at 21). Next, he went to the first floor control
booth and asked the officers there why Defendant Anderson was
bothering him. One responded that Defendant Anderson had a
personal problem with Plaintiff. (Docket Entry 1 at 21).
Plaintiff yelled at the officer in the booth using racial slurs
to describe Defendant Anderson. (Docket Entry 1 at 21). He
asserts a camera filmed the entire episode. (Docket Entry 1 at
21). Plaintiff continued to refuse to "lock in," causing a code
to be called. (Docket Entry 1 at 21).

Plaintiff asserts he intentionally sought to be charged
with refusing to obey an order, refusing to lock back in, and
conduct which disrupts or interferes with the security or
orderly running of the facility in order to expose the bias and
corruption at NJSP. (Docket Entry 1 at 21-22). However,
Plaintiff claims none of the charges were imposed against him
because Defendant Anderson called nine officers to help him

assault Plaintiff. (Docket Entry 1 at 22). Plaintiff states he
was "sprayed down," kicked in the lower back, punched in the
neck, and had his legs stomped on before being handcuffed.
(Docket Entry 1 at 22).

Plaintiff was taken to medical to be evaluated, however the
evaluation was cut short after one of the officers glared at the
nurse. (Docket Entry 1 at 22-23). Plaintiff refused to leave the
chair and informed the nurse that the officers had threatened to
kill him upon returning to lock-up. The nurse cleared him to
leave medical. (Docket Entry 1 at 23). Plaintiff was escorted
back to I-Left and placed into a dry cell. (Docket Entry 1 at
23). Plaintiff resisted being placed into the cell, at which
point Officer Seanna told Plaintiff "because of what you did to
SCO/Sgt. Carl Stout and the courts didn't punish you with more
prison time, we need to teach you a lesson of our own . . . . "
(Docket Entry 1 at 23). When he refused to allow the officers to
uncuff him and leave him in the dry cell, Plaintiff was beaten
again. (Docket Entry 1 at 23-24).

Plaintiff was charged with destroying Government property,
N.J. ADMIN. CODE 10A:4-4.1, .152; and tampering with or blocking
any locking device, N.J. ADMIN. CODE 10A:4-4.1, *.154. He
contested the charges and asked for the camera footage. (Docket
Entry 1 at 24). He also requested a polygraph. (Docket Entry 1
at 24). Defendant Jantz told Plaintiff there was no camera

filming the episode. (Docket Entry 1 at 25). Plaintiff again alleges she did this because she was receiving money in exchange for performing sexual acts on the other officers. (Docket Entry 1 at 24). Plaintiff asserts that as a result of the false charges and conspiracy, he was denied parole. (Docket Entry 1 at 25). Plaintiff's disciplinary charges were upheld on administrative appeal. (Docket Entry 1-1 at 7). Plaintiff states he was unable to file an appeal with the New Jersey Superior Court Appellate Division because none of his legal papers made it to a paralegal in East Jersey State Prison. (Docket Entry 1 at 25-26). He states the business office took money out of his account, but the paralegal stated he never received the documents.

Plaintiff was transferred to Northern State Prison ("NSP") on December 4, 2013. (Docket Entry 1 at 26). Sometime during his multiple transfers between NJSP and NSP, Plaintiff lost his family pictures, clothes, and legal papers. (Docket Entry 1 at 26). He submitted property claim forms, (see Docket Entry 1-1 at 9), however he did not receive any relief, even after contacting the Office of the Corrections Ombudsman and Special Investigation Division. (Docket Entry 1 at 26; Docket Entry 1-1 at 10-16).

In March 2014, NSP Officer Marsh claimed Plaintiff splashed him. (Docket Entry 1 at 27). When Plaintiff denied the

9

allegation to an unidentified sergeant, the sergeant responded "you did that to SCO Stout in NJSP." (Docket Entry 1 at 27). The sergeant ordered a "video movement," had Plaintiff evaluated by a nurse, and placed Plaintiff into a dry cell in the SU/Hospital area. (Docket Entry 1 at 27-28). Plaintiff asked why he was being placed into this unit, and an officer stated Defendant Nelson had ordered Plaintiff to be placed there because of the prior incident with Defendant Stout. (Docket Entry 1 at 28). Plaintiff was released from the dry cell after NSP's special investigation division ("SID") cleared him for release. (Docket Entry 1 at 28).

Plaintiff appeared before Discipline Hearing Officer John Odysse and was found guilty of splashing Officer Marsh. (Docket Entry 1 at 28-29). Plaintiff asserts he was denied due process because Officer Odysse would not give him access to lab work or pictures. (Docket Entry 1 at 28-29). Plaintiff was ordered back to Officer Marsh's unit, and he refused to go back to the "hostile environment." He also noticed that his mother's wedding band was missing from his cell. (Docket Entry 1 at 29).

For refusing to move cells, Defendant Nelson ordered Plaintiff to return to SU/Hospital dry cell. Plaintiff refused to enter the dry cell and states the officers forced him into the cell, causing his head to hit the edge of the wall. (Docket Entry 1 at 29). Plaintiff later refused to lock back in after

10

his shower that evening. (Docket Entry 1 at 29). Plaintiff stayed in the dry cell until April 4, 2014, when he was transferred to Cell 300 on I-wing. (Docket Entry 1 at 29-30).

The next morning, April 5, 2014, Plaintiff informed Officer Perez that his mother's wedding ring and other property had been stolen. (Docket Entry 1 at 30). Officer Perez and other officers told Plaintiff to either get in the shower or back in his cell. (Docket Entry 1 at 30). Plaintiff loudly refused to get back in the cell until he spoke with a sergeant, at which time the officers began shouting he had splashed them. (Docket Entry 1 at 30). Other officers responded, handcuffed Plaintiff, and walked him off camera and proceeded to punch Plaintiff in the stomach and back. (Docket Entry 1 at 30). One officer used a racial epithet towards Plaintiff, and stated he was "'going to learn or we will force him to the ground of Death.'" (Docket Entry 1 at 30). Plaintiff was then returned to a dry cell, and was assaulted along the way. (Docket Entry 1 at 30).

SID visited Plaintiff again to discuss the allegations. (Docket Entry 1 at 30). Plaintiff told them he was being set up so that he would fight back and accrue more "street charges," thus prolonging his prison term. (Docket Entry 1 at 30). He told them that Defendant Nelson started the trouble at NSP by telling everyone about Plaintiff's encounter with Defendant Stout at NJSP. (Docket Entry 1 at 31). One SID officer responded "'We

11

don't believe inmates against bias, corruption or assaults. We only believe inmates unless it deals with drugs or cell phone and corrupted SCO's brought in,'" and that "'we don't believe you are being assaulted and honestly we don't care.'" (Docket Entry 1 at 31).

Plaintiff was again given disciplinary charges for splashing the officers, however the hearing officer determined there was insufficient evidence to substantiate the charges. (Docket Entry 1 at 31). Plaintiff told the officer that he wanted to be transferred because he was afraid he was going to be killed. Plaintiff indicates the hearing officer wrote this on her form and sent it to Defendant Nelson. (Docket Entry 1 at 31).

A few days later, Plaintiff was ordered to move cells, however he refused to comply. (Docket Entry 1 at 31). He appears to have ultimately have been moved, however, as he asserts that on April 19, 2014, he claimed that he was going to kill himself in order to be transferred out of that area. (Docket Entry 1 at 31-32). Although it is unclear from the complaint, Plaintiff may have placed a rope around his neck to demonstrate his intent. (Docket Entry 1 at 32). A code was called, and the responding officers handcuffed Plaintiff and beat him before taking him to medical. Plaintiff was searched while he was in medical, and the officers threw away the legal papers they found in his pocket.

12

(Docket Entry 1 at 32).[2]  The doctor ordered Plaintiff be returned to a dry cell and to be placed under constant watch. (Docket Entry 1 at 32).

On the way to the dry cell, Officers Winter, Fernandez, Valdez, and an unidentified sergeant beat Plaintiff causing severe damage to his back such that x-rays were taken. (Docket Entry 1 at 32). Plaintiff was beaten again upon entering the cell. (Docket Entry 1 at 33). Plaintiff informed a nurse what happened, however she told him to just leave the officers alone because the nurses do not like to get involved and risk losing their jobs or getting harassed. (Docket Entry 1 at 33). Plaintiff was removed from the dry cell the next day. (Docket Entry 1 at 33).

Plaintiff was transferred back to NJSP on April 29, 2014. (Docket Entry 1 at 33). He states the new NJSP Administrator, Stephen D'Illio, set him up to fight another inmate. He further states Officer Diaz informed the other inmates of his max out date so that the gang members would kill him upon his release. (Docket Entry 1 at 34). He asserts none of his remedy forms made it out of the unit. (Docket Entry 1 at 34).

Finally, Plaintiff states that on October 3, 2014, he handed his mail to Officer Caswell. (Docket Entry 1 at 35).

---

[2] Plaintiff does not state to what matter these legal papers pertained.

13

Because none of his mail was making it out of the unit, Plaintiff placed another inmate's name and number on his outgoing mail. (Docket Entry 1 at 35). In spite of taking this precaution, another inmate informed Plaintiff that Officer Caswell handed Plaintiff's outgoing mail to a member of the Bloods gang with whom Plaintiff had been fighting. (Docket Entry 1 at 35). Plaintiff learned from others that Defendant Stout and Defendant Anderson had given orders to other staff members to harass Plaintiff.

Plaintiff names twenty-seven co-conspirators, (Docket Entry 1 at 35), however he only seeks relief from Defendant Stout, Defendant Anderson, Defendant Jantz, and Defendant Nelson. Accordingly, the Court construes the complaint as asserting claims solely against these named defendants.[3]  Plaintiff asks this Court to remove the defendants from their positions and to award him $200,000 in damages. (Docket Entry 1 at 7).

## II. DISCUSSION

## A. Standards for a Sua Sponte Dismissal

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil

---

[3] If Plaintiff wishes to pursue claims against any of the other alleged conspirators, he must submit an amended complaint specifically naming them as defendants and describing the claims he wishes to pursue against them.

14

actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. §§ 1915(e)(2)(b) and 1915A because Plaintiff is a prisoner proceeding *in forma pauperis* and is seeking relief from governmental employees.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (following *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992).

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte*

screening for failure to state a claim,[4] the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

## B. Section 1983 Actions

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected,

---

[4]  "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

> any citizen of the United States or other person
> within the jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ....

§ 1983. Thus, to state a claim for relief under § 1983, a

plaintiff must allege, first, the violation of a right secured

by the Constitution or laws of the United States and, second,

that the alleged deprivation was committed or caused by a person

acting under color of state law. *See West v. Atkins*, 487 U.S.

42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir.

2011).

## C.   Eighth Amendment Claims

Plaintiff asserts that Defendants Stout, Anderson, and

Nelson violated his Eighth Amendment right to be free from cruel

and unusual punishment, and raises excessive force and

conditions of confinement claims.

### 1. Excessive Force

In an excessive force claim under the Eighth Amendment, the

inquiry is whether force was applied in a good faith effort to

maintain or restore discipline, or maliciously and sadistically

to cause harm. *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir.

2000). In assessing whether the force used was appropriate, the

Court considers the need for the application of force and its

relationship to the amount of force used as well as the injury

17

inflicted. *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009).

Construing all inferences in Plaintiff's favor, as the Court must do at this preliminary screening stage, this Court preliminarily finds that Plaintiff has pled facts sufficient to state a plausible claim for relief as to Defendant Anderson's actions on October 20, 2013. In particular, the facts, as alleged by Plaintiff in his complaint, are sufficient to question the use of force, as well as the manner and purpose for which the force was applied. Plaintiff alleges Defendant Anderson and nine other officers assaulted Plaintiff by "spraying" him, kicking, punching, and stomping on him in response to Plaintiff's nonviolent refusal to lock into his cell. (Docket Entry 1 at 22). He also states a nightstick was used against him while he was on the floor. (Docket Entry 1 at 22). The Court will allow Plaintiff's excessive force complaint against Defendant Anderson to proceed at this time.[5]

_____

[5] Any excessive force complaints against Defendant Stout arising from the June 2012 incident are barred by the statute of limitations. The statute of limitations on civil rights claims is governed by New Jersey's two-year limitations period for personal injury. *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985); *Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010); *O'Connor v. City of Newark*, 440 F.3d 125, 126–27 (3d Cir. 2006). This limitations period expired in June 2014, months before Plaintiff mailed this complaint on October 31, 2014. "Although the statute of limitations is an affirmative defense, *sua sponte* dismissal is appropriate when 'the defense is obvious from the face of the complaint and no further factual record is

## 2. Conditions of Confinement Claim

Plaintiff also appears to raise a conditions of confinement claim against Defendant Nelson, stating that he "covered up the beatings" and "kept me into a hostile environment to be killed by staff members." (Docket Entry 1 at 8).

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). State actors are liable only for their own unconstitutional conduct. *Bistrian v. Levi*, 696 F.3d 352, 366 (3d Cir. 2012). The Third Circuit has identified two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates: (1) "liability may attach if they, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm"; or (2) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiffs rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir.

required to be developed.'" *Cruz v. SCI—SMR Dietary Servs.*, 566 F. App'x 158, 160 (3d Cir. 2014) (quoting *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006)) (other citations omitted).

2014) (internal citations omitted), *rev'd on other grounds sub nom Taylor v. Barkes*, 135 S.Ct. 2042 (2015).

Plaintiff has not alleged a policy enacted by Defendant Nelson directly caused his harm. Plaintiff's allegations that NSP hides prisoners in "DryCells, SU's and Hospital area[s] so there won't be contact with help of any kind such as other inmates and prison staff member[s] that are softhearted and do their best to help an inmate out of the oppression, punishment being done behind closed cell doors" (Docket Entry 1 at 27-28), could be construed as a policy or practice, however Plaintiff does not allege that Defendant Nelson established this policy. *See Barkes*, 766 F.3d at 316 (holding "establish[ing] *and* maintain[ing] a policy, practice or custom" directly causing harm is basis for supervisory liability (emphasis added)); *see also A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

Plaintiff has also insufficiently pled that Defendant Nelson "had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Barkes*, 766 F.3d at 316. Plaintiff asserts he wrote to Defendant Nelson regarding the original incident with Defendant Stout in 2012, (Docket Entry 1 at 14), and the October 20, 2013 incident with Defendant Anderson (Docket Entry 1 at 25). He also states that after he was cleared of splashing Officer Perez at NSP, the hearing officer wrote to

Defendant Nelson that Plaintiff's life was in danger. (Docket Entry 1 at 31). Receipt of grievances is an insufficient basis of liability. *See Stringer v. Bureau of Prisons, Fed. Agency*, 145 F. App'x 751, 753 (3d Cir. 2005) (alleged failure to process or respond to inmate's grievances did not violate his rights to due process and is not actionable); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). Plaintiff alleges no response from Defendant Nelson, or any other action on his part which could be said to demonstrate that Defendant Nelson knew of the alleged violations or acted in such a manner that he could be said to have acquiesced to the actions of the assaulting officers. Moreover, at one point Plaintiff asserts the officers' actions were "taking place behind the Administrators backs," suggesting Defendant Nelson in fact had no knowledge of the officers' actions. (Docket Entry 1 at 14).[6]

Plaintiff's claims against Defendant Nelson must be dismissed, however Plaintiff shall be given leave to amend.[7]

---

[6] Plaintiff includes a copy of the appeal of his disciplinary proceeding addressed to Defendant Nelson. (Docket Entry 1-1 at 6). The hearing officer wrote: "[Plaintiff] states that he is in fear of his life and only acts out because officers in ad-seg continue to assault him, so he prays for your help in transferring him to NJSP or [South Woods State Prison] ad-seg." (Docket Entry 1-1 at 6). The form also indicates it was received by "R. Ballester." (Docket Entry 1-1 at 6). There is therefore no indication that Defendant Nelson ever received this notice.
[7] To the extent Plaintiff attempts to allege a conditions of confinement claim regarding bug bites, and inadequate food and

21

## D. Conspiracy

Plaintiff's primary allegation is that Defendants engaged in a massive conspiracy spanning two prisons and two years to make his prison term uncomfortable. (Docket Entry 1 at 36). "To make out a conspiracy claim under § 1983, [Plaintiff] must show that 'persons acting under color of state law conspired to deprive him of a federally protected right.' As a threshold matter, however, a § 1983 conspiracy claim only arises when there has been an actual deprivation of a right." *Perano v. Twp. of Tilden*, 423 F. App'x 234, 239 (3d Cir. 2011) (quoting *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999)).

Although the Court notes there is no right to a "comfortable" prison term, *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), Plaintiff has alleged facts suggesting that his Eighth Amendment right to be free from cruel and unusual punishment and his First Amendment right to petition the courts for redress of grievances have been violated at the direction of Defendants Stout and Anderson. (Docket Entry 1 at 35-36). Accepting Plaintiff's facts as true for screening purposes only, Defendants Stout and Anderson have engaged in, and have encouraged others to engage in, the harassment of Plaintiff

---

water from his June 2012 dry cell stay, (Docket Entry 1 at 14), that claim is barred by the statute of limitations.

since his original encounter with Defendant Stout. The Court
will therefore permit the conspiracy claim to proceed against
Defendants Stout and Anderson.

The conspiracy claim against Defendant Jantz must be
dismissed. The Supreme Court held in *Heck v. Humphrey* that a
district court must dismiss a § 1983 complaint if "a judgment in
favor of the plaintiff would necessarily imply the invalidity of
his conviction or sentence . . . unless the plaintiff can
demonstrate that the conviction or sentence has already been
invalidated." 512 U.S. 477, 487 (1994). The Court applied *Heck*
to prison disciplinary proceedings in *Edwards v. Balisok*, 520
U.S. 641, 648 (1997) (holding claims for declaratory relief and
money damages that necessarily implied the invalidity of the
punishment imposed by prison disciplinary proceedings are not
cognizable under § 1983).

In order to prove his conspiracy claim against Defendant
Jantz, Plaintiff must demonstrate she agreed to violate
Plaintiff's due process rights. If Plaintiff were to succeed on
that claim at trial, it would necessarily imply the invalidity
of the disciplinary proceeding. Absent a showing that the charge

has already been invalidated,[8] Plaintiff's conspiracy claim against Defendant Jantz must be dismissed.[9]

Plaintiff has also failed to sufficiently plead facts implicating Defendant Nelson in the alleged conspiracy. Plaintiff has alleged no facts that would enable this Court to draw an inference that Defendant Nelson conspired with Defendants Stout and Anderson. Although Plaintiff alleges his troubles at NSP began upon Defendant Nelson's arrival from NJSP and that Defendant Nelson told NSP officers about Plaintiff's confrontation with Defendant Stout, he has provided no factual basis to make Defendant Nelson's direct involvement facially plausible. His allegations against Defendant Nelson are purely conclusory in nature. The conspiracy claim shall therefore be

---

[8] Plaintiff mentions that he was unable to pursue an appeal of his disciplinary proceeding because his mail never made it to the paralegal assisting him with the appeal. (Docket Entry 1 at 25-26). The Court declines to construe this as a separate access -to-the-court claim as "prisoners may only proceed on access to the courts claims in two types of cases, challenges (direct or collateral) to their sentences and conditions of confinement." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (per curiam). It is not clear to the Court that Plaintiff's appeal of his disciplinary charge would be considered a condition of his confinement. Should Plaintiff wish to pursue an access-to-the-courts claim based on this incident, he must address this limitation as well as the other access-to-the-courts factors in an amended complaint.

[9] To the extent Plaintiff raises a denial of due process claim against Defendant Jantz, that claim must be dismissed as well as being barred by *Heck* and *Edwards*.

dismissed as to Defendant Nelson, however Plaintiff shall be given leave to amend his complaint in this regard.

## D. Deprivation of Property

Plaintiff also asserts a deprivation of property claim against Defendant Nelson. The Supreme Court has held that the "unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000). Plaintiff submitted property claim forms and inmate remedy forms regarding his missing items. (Docket Entry 1-1 at 8-9, 13). He was also informed he had the right to pursue a small claims court action or appeal to the Appellate Division if he was not satisfied with the prison's response. (Docket Entry 1-1 at 13). Because Plaintiff was afforded a post-deprivation remedy, his deprivation claim is therefore legally flawed and this claim shall be dismissed with prejudice. *See Toney v. Sassaman*, 588 F. App'x 108, 110 (3d Cir. 2015); *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).

**E. Leave to Amend**

As Plaintiff may be able to allege facts that would address the deficiencies of his claims as noted by the Court, Plaintiff may move for leave to file an amended complaint. Any motion to amend the complaint must be accompanied by a proposed amended complaint.

Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and cannot be utilized to cure defects in the amended complaint, unless the relevant portion is specifically incorporated in the new complaint. 6 Wright, Miller & Kane, *Federal Practice and Procedure* 1476 (2d ed. 1990) (footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. *Id.* To avoid confusion, the safer course is to file an amended complaint that is complete in itself. *Id.* The amended complaint may not adopt or repeat claims that have been dismissed with prejudice by the Court.

**III.   CONCLUSION**

For the reasons stated above, Plaintiff's excessive force complaint against Defendant Anderson and his conspiracy complaint against Defendants Stout and Anderson shall be permitted to proceed at this time. Plaintiff's excessive force complaint against

26

Defendant Stout is dismissed with prejudice. Plaintiff's complaints against Defendant Nelson are dismissed without prejudice, except for the deprivation of property claim which is dismissed with prejudice. Plaintiff's conspiracy complaint Defendant Jantz is dismissed without prejudice.

An appropriate order follows.


10/30/15
_____
Date

ANNE E. THOMPSON
U.S. District Judge